## TITLE TO THE BORROW PITS ADJACENT TO THE LICKING RESERVOIR.

### Court of Appeals for Licking County.

ISAAC JONES V. WM. P. MYERS; AND ISAAC JONES V. JAMES T. HAYNES.

#### Decided, 1913.

*Title to Lands Issued by the United States may be Inquired into— Adverse Possession can not be Claimed against the State—Failure of Title in Lessees of the State—Canal Lands and Those Adjacent Thereto.*

Admitting that certain depressions adjacent to the embankment surrounding a canal reservoir are borrow pits from which earth was taken in constructing the embankment, the act of the state in so excavating and removing the earth, or in subsequently tiling the depressions in order to drain them of water seeping out of the reservoir, did not amount to an appropriation of the land from which earth was thus removed; and in the absence of any evidence that title to these pits was acquired by the state by selection, under the act of Congress of May 24, 1828, a lease of such lands by the state is void as against the title of one holding by a direct line of mesne conveyances to himself from the United States under a patent issued in 1843.

*Kibler & Kibler*, for plaintiffs.
*Flory & Flory*, contra.

POWELL, J.; SHIELDS, J., concurs; VOORHEES, J., not sitting.

These two cases came into this court by appeal, and are submitted together, being identical in the issues presented, both of fact and of law. The plaintiff seeks to have his title and possession quieted to a tract of land described in his petition; the defendant Myers claims the right of possession to the west half, and the defendant Haynes to the east half of the same land, and both ask that their title to the same be quieted as against the plaintiff or those claiming under him. Plaintiff's right is the same in each case, and the defendant's separate rights are ac-

quired from the same source and by the same instrument of lease.

Plaintiff claims title to the land described in the petition, under a patent from the general government issued April 10, 1843, and by a direct line of *mesne* conveyances from the United States to himself. The land described in the patent is the N. W. ¼ of the S. W. ¼ of S. 13, T. 17, and R. 18, refugee land containing a fraction over forty-three acres. Across this tract and running in a northeasterly and southwesterly direction is the northwestern embankment of the Licking reservoir, now called Buckeye lake, so that the southeastern part of the said forty-three acre tract is covered by the bank and the waters of the lake; the part of said tract not covered by the lake is owned and occupied by the plaintiff, Isaac Jones, and has been so owned and occupied by him since 1879. No question is made by any of the parties to this suit as to the title of so much of said tract as is covered by the waters of the lake or the said embankment. This title is conceded to be in the state of Ohio by lapse of time and adverse possession as against parties holding under the patent from the government. But adjoining the embankment on the northwest side are what is known as "borrow pits" or places from which the earth has apparently been removed for the purpose of constructing the said embankment, which is an artificial bank built to retain the waters of the lake above the level of the lands on that side, thereby creating low places adjoining the outer edge of said embankment the entire length of so much thereof as lies on plaintiff's said lands. These low places thus made vary in width from a point at or near the eastern end up to one hundred and fifty feet and are estimated at an average of one hundred to one hundred and twenty-five feet in width along the entire embankment on plaintiff's said land. It is this line of borrow pits along the northwesterly side of Buckeye lake across the lands of plaintiff that is involved in this action, plaintiff claiming title under a patent from the government supplemented by actual possession of the premises by him from 1879 up until the present time, and the defendants claiming the right of possession by lease from the state of Ohio, which claims title to said borrow pits either by virtue of the

act of Congress of May 24, 1828, granting five hundred thousand acres of land to the state of Ohio for the purpose of assisting in the construction of the canal system of the state, or by appropriation under the act of the Legislature of Ohio of February 4, 1825, providing for the construction of said canal system and authorizing the appropriation of land or materials for that purpose. The evidence shows that the canal system was completed some time in 1832; the date of the patent for the lands described is April 10, 1843, so that it is a contest between two titles emanating from the government as to which conveys the better rights to the premises involved in this action, under the respective titles thus claimed. Buckeye lake, formerly Licking reservoir, is a part of the canal system of Ohio, and although it is now dedicated as a public park for the benefit of the citizens of the state, it was originally constructed as a part of that system.

The common source of title to all lands in Ohio is the general government and the patent issued by the general government is usually conclusive as to the title under it. The court can, however, inquire whether or not such title is in conflict with any other prior legal or equitable title to the same land. The state claims to own these lands either by virtue of a selection of the same under the act of Congress, or by an appropriation under the statutes of Ohio providing for the appropriation of lands in the construction of the canal system. No evidence was offered of any selection of this particular tract of land ever having been made. The statute, which authorizes such selection, provides that the same shall be made within two years from the date thereof, under the authority and by the direction of the Governor of the state of Ohio, and that when such selection has been made, he shall report the same to the land office of the district where such land lies, and the lands so selected should be granted by the United States to the state of Ohio. If this had been done so as to show a transfer of title under this statue to the state of Ohio, there ought to have been a record of it, and since no such record has been offered, we conclude that it was not done and that the state did not acquire title to these lands by selection under this statute. There is no question made as to the line or

chain of title from the patentee under the patent of April 10, 1843, to the plaintiff.  His title is good provided the state had not acquired a prior title by virtue of an appropriation under the statute of February 4, 1825.  It has been repeatedly held in Ohio that an appropriation under this statute conveys absolute title in fee simple to the state, and when such title actually vests in the state, it can not be defeated by a claim of adverse possession or by lapse of time, but remains in the state until conveyed away by virtue of some duly authorized proceeding.

Claim is made on the part of the plaintiff that by reason of the continued use and possession of these borrow pits by the plaintiff, his title would become complete as against the state by adverse possession.  This position is not tenable, as adverse possession does not run against the state.  Plaintiff's possession of these borrow pits was either as a matter of right under his title from the government, or by sufferance of the state of Ohio.

The claim is also made on behalf of the defendants that because seepage from the lake through the embankment, and the over-flow, at times of high water, found its way down into these borrow pits, and that afterwards the state tiled out the borrow pits constituted an appropriation of the same.  But the evidence does not show that these borrow pits were made by the state with the intent or purpose that the same should constitute a drain or ditch to carry off such seepage and over-flow for the benefit of the lake or the canal system of Ohio.  The seepage and the over-flow from the lake through its waste weirs found its way to the borrow pits simply by operation of the natural law by which water runs to the low places until it finds its level and did not find its way there by reason of any construction on the part of the state in such a way as to constitute drainage for such seepage and over-flow.  If these borrow pits had been constructed by the state with that end in view and not as a result simply of excavating the soil for other purposes, it would present a different question, as such construction might then have been considered as an appropriation of the land itself for the benefit of the canal system.

The claim is also made by the plaintiff that no such appropriation was ever had, on the part of the state, of the lands in controversy as would carry with it a title to the same; that such appropriation as is shown here, if one was ever made, would convey only the materials taken from the land and used by the state in the construction of the artificial embankment of the reservoir or lake. And there is no direct evidence in the case that any such appropriation was ever had. It is true that the topography of the land supplies an inference that the soil that was formerly in these borrow pits was taken out and used in the construction of such embankment, but no witness testifies to this as a fact.

To constitute an appropriation within the meaning of the law, the thing appropriated must be taken into actual ownership, possession and use. To appropriate anything for the canal system, it must become a part of that system.

''Where the possession and use of lands or streams in the construction of the Ohio canal system were merely incidental, constructive or indirect, and not of a character to fairly apprise both the officers of the state and the owners of the lands, that such lands or streams were appropriated and used in the construction of the canals, no fee to such lands or streams vested in the state.''  61 O. S., 561.

Again it will be remembered that if any appropriation of these lands was made by the state in the construction of the canal system, such appropriation was made while the title to said lands was still in the general government, as no patent was ever issued until more than ten years after such canal system had been completed.

The case of *State of Ohio* v. *Fenn et al* is authority for the proposition that appropriation by the state did not operate on unpatented lands under this statute.

''Section 8 of the act of February 4, 1825, the substance of which was an appropriation by the state of all lands, waters and streams taken possession of by the canal commissioners, vesting the fee in the state, did not operate on unpatented United States lands, such as the land involved in this case was.''  10th N.P.(N. S.), 325.

This case also holds that as against the general government the state could not obtain title either by appropriation under this statute or by lapse of time. It is conceded, however, that as against a patentee the state could acquire title. For this reason, no claim is made in this action for so much of the lands described in the patent as is inundated by the waters of the lake or covered by the embankment built to retain the same. As was said before, there is no direct evidence that these borrow pits, so-called, were made by the state in obtaining materials for the construction of the embankment of the lake; but admitting that such was the case, was the act of the state in excavating and removing the soil adjacent to such embankment an appropriation of the lands from which such soil was removed so as to vest the title to the same in the state? This court is of the opinion that it was not; that the appropriation contemplated by the statutes is an actual appropriation or taking possession of the land itself as a part of the canal system and that removal of soil from the surface of the lands for the purpose of constructing an embankment, and for no other purpose is no more an appropriation of the fee to the land itself than if such land had been covered with stone or timber and the same had been removed by the state for use in the construction of such embankment. It is an appropriation of the material used and of that only. This was authorized by the terms of the statutes above referred to.

Finding as we do that the state did not acquire title by selection or, at least, that there is no evidence whatever that the title to these lands was so acquired, and that the state was without any title as against the general government, we think that it could not acquire title as against the patentee of the government, who acquired his title subsequently to such appropriation, unless there would be a new act of possession with a claim of ownership on the part of the state after such patent had been issued. There is no evidence whatever of anything of this kind, nor is any claim made to this effect.

To recapitulate:

1. The plaintiff has title from the government for the lands in controversy through the patent issued to Jacob Grove, April 10, 1843, by intermediate conveyances to himself.

2.  There is no evidence that the state acquired title to these lands by selection under the act of Congress, of May 24, 1828.

3.  If the state acquired title by appropriation under the act of the State Legislature of February 4, 1825, it must have acquired it before the canal system was completed in 1832, and before the land in controversy was patented in 1843, and while the title thereto was still in the general government.  This could not be done.

4.  The acts relied on by the state to show an appropriation of the lands described are insufficient for that purpose.

5.  There has not been any appropriation of these lands by the state, since the patent for the same was issued.

Hence, we conclude:

1.  That the state has no title to the lands in dispute, and its lease to the defendants for the same is void and of no effect.

2.  That the plaintiff has title thereto, and is entitled to the relief prayed for in his petition.

A decree may be entered in conformity with this opinion, quieting the title of plaintiff and making the injunction, heretofore allowed, perpetual.  The cross-petitions of the defendants will be dismissed at their costs.